UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

ADMIRAL INDEMNITY COMPANY,

                    Plaintiff,                    11 Civ. 1158 (JGK)

        - against -
                                                  <u>OPINION AND ORDER</u>

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

                    Defendant.
─────────────────────────────────────

JOHN G. KOELTL, District Judge:

        The plaintiff, Admiral Indemnity Company ("Admiral"),

brings this action against Travelers Casualty and Surety Company

of America ("Travelers"), for declaratory judgment that

Travelers is obligated to pay all or part of the costs Admiral

incurred in defending 315 East 69th Street Owners Corporation

("Owners Corp.") in a state court action.  Owners Corp. was

insured by both Admiral and Travelers.  Admiral and Travelers

have each moved for summary judgment.

        Because Admiral was the primary insurer for the defense

costs of the state court action, and Travelers only provided

excess coverage, Travelers is entitled to summary judgment

dismissing the claim that it participate in the defense costs of

that action.

## I.

The following facts are undisputed unless otherwise noted.

## A.

In 2005, Owners Corp., a condominium association, purchased insurance from both Admiral and Travelers. (Pl.'s R. 56.1 Stmt. at ¶¶1, 12; Def.'s R. 56.1 Stmt. at ¶¶1, 12.) Admiral issued Owners Corp. a commercial general liability insurance policy ("Admiral Policy"). (Pl.'s R. 56.1 Stmt. at ¶¶12-15; Def.'s R. 56.1 Stmt. at ¶¶12-15.) The Admiral Policy covered "bodily injury," "property damage," and "personal and advertising injury" among other things. (Pl.'s R. 56.1 Stmt. at ¶¶14-16; Def.'s R. 56.1 Stmt. at ¶¶14-16.) The Admiral Policy was an occurrence policy that applied to any occurrence "during the policy period." (Admiral Policy, Affidavit of Jessica M. Mendelsohn, sworn to Oct. 12, 2011 ("Mendelsohn Aff."), Ex. 5, at 5.) "Occurrence" is defined by the policy as "an accident, including continuous or repeated exposures to substantially the same general harmful conditions." (Admiral Policy, Mendelsohn Aff. Ex. 5, at 18.)

Travelers issued Owners Corp. Non-Profit Management and Organization Liability Insurance ("Travelers Policy"). (Pl.'s R. 56.1 Stmt. at ¶1; Def.'s R. 56.1 Stmt. at ¶1.) The Travelers Policy provided Owners Corp. with directors and officers

liability coverage.  (Compl. ¶9.)  The Travelers Policy provided coverage on a "claims made" basis, for claims first made against the insured and reported to Travelers during the policy period or during a further three-year discovery period.  (Pl.'s R. 56.1 Stmt. at ¶¶3; Def.'s R. 56.1 Stmt. at ¶4.)

The policy periods for both the Admiral Policy and the Travelers Policy initially ran from February 1, 2005, until February 1, 2006.  (Pl.'s R. 56.1 Stmt. at ¶¶1,12; Def.'s R. 56.1 Stmt. at ¶¶1,12.)  Both Travelers and Admiral issued identical successor policies for the period from February 1, 2006 until February 1, 2007.  (Pl.'s R. 56.1 Stmt. at ¶¶10-11,18-19; Def.'s R. 56.1 Stmt. at ¶¶10-11,18-19.)

Both the Admiral Policy and the Travelers Policy contain "Other Insurance" clauses.  The Admiral Policy Other Insurance clause provides:

> This insurance is primary except when [a number of conditions which are not relevant in this case occur.] If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.

(Pl.'s R. 56.1 Stmt. at ¶20; Def.'s R. 56.1 Stmt. at ¶20.)

In contrast, the Travelers Policy Other Insurance clause states:

> If any Loss otherwise covered under this Policy is Insured under any other valid and collectible Policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent, or otherwise unless such other insurance is written specifically excess of

this Policy by reference in such other Policy to the
Policy Number of this Policy.

(Pl.'s R. 56.1 Stmt. at ¶9; Def.'s R. 56.1 Stmt. at ¶9.)

"Loss" under the Travelers Policy includes defense costs.

(Pl.'s R. 56.1 Stmt. at ¶7; Def.'s R. 56.1 Stmt. at ¶7.)

The Other Insurance clauses of the Admiral and Travelers
Policies remained unchanged when the policies were reissued from
2006 to 2007.  (Pl.'s R. 56.1 Stmt. at ¶¶10-11,18-19; Def.'s R.
56.1 Stmt. at ¶¶10-11,18-19.)  However, in 2007, Admiral issued
a revised policy that succeeded the Admiral 2006-2007 Policy and
ran from February 1, 2007, until March 1, 2008 ("Revised Admiral
Policy").  In the Revised Admiral Policy, Admiral altered its
Other Insurance clause.  The Revised Admiral Policy Other
Insurance clause provides:

> If other valid and collectible insurance is available
> to the insured for a loss we cover…[t]his insurance is
> in excess over…[a]ny other valid and collectible
> insurance, including its defense cost provisions.
> This insurance shall be specifically excess of any
> other policy by which another insurer has a duty to
> defend a 'suit' for which this insurance may also
> apply.  When this insurance in excess, we will have no
> duty…to defend the insured against any 'suit' if any
> other insurer has a duty to defend the insured against
> that 'suit.'  If no other insurer defends, we will
> undertake to do so, but we will be entitled to the
> insured's rights against all those other insurers.

(Affidavit of Robert Buchert, sworn to Nov. 2, 2011 ("Buchert
Aff."), at ¶8.)

The Travelers Policy also has a "Property Damage
Exclusion." (Pl.'s R. 56.1 Stmt. at ¶8; Def.'s R. 56.1 Stmt. at

¶8.)  The Property Damage Exclusion excludes liability for any "[l]oss in connection with any [c]laim...for or arising out of any damage, destruction, loss of use or deterioration of any tangible property...."  (Pl.'s R. 56.1 Stmt. at ¶8; Def.'s R. 56.1 Stmt. at ¶8.)

## B.

Admiral seeks to hold Travelers liable for a share of the costs that Admiral has expended in the defense of a lawsuit that was brought in the New York State Supreme Court, New York County, entitled Stephen Gallup v. 315 East 69th Street Owners' Corp., et al. (the "Gallup Action").  The occurrence that formed the basis for the Gallup Action occurred in March 2005.[1]  Stephen Gallup owned the penthouse apartment at 315 East 69th Street ("the Building") including a greenhouse attached to the apartment.  (Pl.'s R. 56.1 Stmt. at ¶¶33-35; Def.'s R. 56.1 Stmt. at ¶¶33-35.)  Gallup had an agreement (the "Greenhouse Agreement") with Owners Corp. that allegedly gave Gallup primary responsibility over the greenhouse, including maintenance and repair.  (Pl.'s R. 56.1 Stmt. at ¶35.)

---

[1] Admiral initially sought declaratory judgment and indemnification for both the Gallup Action and another complaint, the "Brown/Altman Action."  (See Compl. ¶10)  Because Admiral abandoned its claims against Travelers regarding the Brown/Altman Action, (See Pl.'s Mot. Summ. J. 1, n.1 ), the costs of defending Owners Corp. in that litigation are no longer at issue in this case.  At the argument of the current motions, Admiral pointed out that some of the defense costs of both litigations may be intermingled, but Admiral has not sought to require Travelers to pay any defense costs because of any allegations in the Brown/Altman action.

In or about March 2005, as the alleged result of ongoing repair work to the exterior of the Building undertaken by Owners Corp., Gallup's greenhouse was damaged.  (See Gallup Complaint at ¶22.)  Gallup and Owners Corp. spent months negotiating to resolve the damages issues.  (See Gallup Complaint.)  The negotiations included an alleged Alteration Agreement between the parties.  (See Gallup Complaint at ¶66.)  However, as a result of an impasse in negotiations, Gallup brought suit in state court in April, 2006 against Owners Corp. and others. (See Gallup Complaint at ¶¶1-9.)

Gallup's complaint asserted eleven causes of action seeking: (1) a permanent injunction barring Owners Corp. from attempting to repair or replace the greenhouse; (2) a declaration that the Alteration Agreement was enforceable; (3) a declaration that Gallup was in compliance with the Greenhouse Agreement; (4) a mandatory injunction requiring Owners Corp. to abide by the Greenhouse and Alteration Agreements; (5) recovery for damages to Gallup's real and personal property, due to faulty repairs; (6) constructive eviction from a part of Gallup's unit, due to faulty repairs; (7) breach of the warranty of habitability, due to faulty repairs; (8) a permanent injunction barring Owners Corp. from attempting to terminate Gallup's proprietary lease, based upon his refusal to pay costs and expenses that Owners Corp. incurred due to faulty repairs;

(9) a claim against Steven Seplow, the building manager employed by Owners Corp., for damages from the faulty repairs; (10) a claim for defamation against Steven Seplow; and (11) attorneys' fees. (Pl.'s R. 56.1 Stmt. at ¶36; Def.'s R. 56.1 Stmt. at ¶36.)

In May 2006 Travelers disclaimed coverage for the Gallup Action, explaining in a letter dated May 11, 2006, that all claims in the action fell within the Property Damage Exclusion. (Pl.'s R. 56.1 Stmt. at ¶37 Def.'s R. 56.1 Stmt. at ¶37.)  In a letter dated May 15, 2006, Admiral partially disclaimed coverage, citing exclusions in the Admiral Policy. (Buchert Aff. at ¶ 3; Buchert Letter, Buchert Aff. Ex. F.)  Admiral disclaimed coverage as to all causes of action except the fifth (property damage), the ninth (faulty repairs by Steven Seplow), and the tenth (defamation against Steven Seplow). (Buchert Letter, Buchert Aff. Ex. F.)  However, recognizing that "the duty to defend is broader than the duty to indemnify," Admiral agreed to defend Owners Corp. under the Admiral Policy for all claims in the Gallup Action. (Buchert Aff. at ¶3; see also Buchert Letter, Buchert Aff. Ex. F.)

### C.

On February 18, 2011, Admiral filed the present action against Travelers.  Jurisdiction is based on diversity of citizenship jurisdiction.  28 U.S.C. § 1332.  Admiral alleges three causes of action: (1) declaratory judgment that Travelers was obligated to pay all or part of the defense costs Admiral incurred defending the Gallup Action; (2) declaratory judgment that Travelers owed indemnification to Admiral for all or part of the liabilities that arose with respect to the Gallup Action; and (3) recovery for breach of contract on the theory that Admiral was an "implied third party beneficiary" of the contract between Owners Group and Travelers.  (See Compl. ¶¶31-40.)[2]

On June 17, 2011, Travelers answered Admiral's complaint.  Both Admiral and Travelers have now moved for summary judgment.

### II.

### A.

The standard for granting summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S.

---

[2] At oral argument, Admiral withdrew its claims under the second and third causes of action.  Those claims are therefore dismissed.  The only remaining issue for summary judgment is the first cause of action regarding Travelers' liability for all or a portion of Admiral's defense costs.

317, 322 (1986).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Chepilko v. Cigna Group Ins., No. 08 Civ. 4033, 2012 WL 2421536, at *1 (S.D.N.Y. June 27, 2012).

     In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is

improper if there is any evidence in the record from any source
from which a reasonable inference could be drawn in favor of the
non-moving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d
29, 37 (2d Cir. 1994).  If the moving party meets its burden,
the burden shifts to the nonmoving party to bring forward
"specific facts showing a genuine issue for trial." Ovesen v.
Mitsubishi Heavy Indus. of Am., Inc., No. 04 Civ. 2849, 2012 WL
677953, at *1 (S.D.N.Y. Mar. 1, 2012) (citation omitted).  The
non-moving party must produce evidence in the record and "may
not rely simply on conclusory statements or on contentions that
the affidavits supporting the motion are not credible." Ying
Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993);
see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir.1998)
(collecting cases); Ovesen, 2012 WL 677953, at *1.  If there are
cross motions for summary judgment, the Court must assess each
of the motions and determine whether either party is entitled to
judgment as a matter of law.  See Heublein, Inc. v. United
States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citation omitted).

Under New York law, which both parties agree applies in
this diversity case,[3] the interpretation of an insurance policy
is a question of law appropriately decided on a motion for

---

[3] The court can accept the agreement of the parties.  See, e.g., JA Apparel
Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir. 2009) (applying New York law to a
contract where the parties agreed it governed their dispute); Powell v.
Omnicom, 497 F.3d 124, 129 n.1 (2d Cir. 2007) (applying New York law where
parties implicitly agreed that it governed their contract dispute).

summary judgment if the policy is unambiguous.  See Vam Check Cashing Corp. v. Fed. Ins. Co., 787 F. Supp. 2d 264, 267-68 (E.D.N.Y. 2011) (citation omitted).  In determining a dispute over insurance coverage, the Court looks to the language of the policy.  See Raymond Corp. v. Nat'l Union Fire Ins. Co., 833 N.E.2d 232, 234 (N.Y. 2005).  The Court construes the policy "in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect."  See id.  "If the plain language of the policy is determinative, [the Court] cannot rewrite the agreement by disregarding that language.  See Fieldston Property Owners Ass'n v. Hermitage Ins. Co., 945 N.E.2d 1013, 1017 (N.Y. 2011) (citing Raymond Corp., 833 N.E.2d at 234).

## B.

Admiral asserts that Travelers had a duty to defend Owners Corp. in the Gallup Action and therefore Admiral is entitled to recover some portion of its costs of defending Owners Corp. in the Gallup Action.  Travelers argues that the Other Insurance clauses control, and because the Travelers Policy was only an excess coverage policy, Travelers had no duty to defend Owners Corp.  Travelers also argues that, even if the Other Insurance clauses did not excuse Travelers failure to defend Owners Corp., the Travelers Policy Property Damage Exclusion applied to all of

the claims in the Gallup Action.  Because the Other Insurance clauses required Admiral to defend the Gallup Action without participation from Travelers, it is unnecessary to reach the arguments relating to the scope of the Travelers Property Damage Exclusion.

Travelers argues that the Admiral Policy and the Travelers Policy have "complementary" other insurance clauses that dictate the priority of defense costs.  Admiral counters that the policies are neither concurrent nor complimentary because the Admiral Policy does not cover all the claims asserted in the underlying action.  Furthermore, Admiral argues, even if the policies are concurrent, that requires the two insurers share the defense costs equally.  The Fieldston decision, decided six days after Admiral filed the current complaint, is fatal to Admiral's claim.  See Fieldston, 945 N.E.2d at 1013 (N.Y. 2011).

The facts in Fieldston are nearly identical to those in this lawsuit.  In Fieldston, Hermitage Insurance Company issued a "per occurrence" commercial general liability ("CGL") policy to a property owners association that, like Admiral's policy, covered "bodily injury," "property damage," and "personal and advertising injury."  See id. at 1013.  The Hermitage policy contained an Other Insurance clause that was identical to the clause in the Admiral Policy: "[t]his insurance is primary except when b. below applies. If this insurance is primary, our

12

obligations are not affected unless any of the other insurance is also primary." See id. at 1015.

The property owners association also purchased a "claims made" "Association Directors and Officers Liability" ("D&O") policy from Federal Insurance. See id. Federal's policy contained an Other Insurance clause that, like the clause in the Travelers Policy, provided that the policy would only cover the excess:

> If any Loss arising from any claim made against the Insured(s) is insured under any other valid policy(ies) prior or current, then this policy shall cover such Loss, subject to its limitations, conditions, provisions, and other terms, only to the extent that the amount of such Loss is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits provided in this policy.

See id.

A federal and a state court action were brought against the property owners association for injurious falsehood, among other claims. See id. Federal refused to cover any of the litigation costs. See id. at 1016. Hermitage defended both actions under a full reservation of its rights. See id. Importantly, although Hermitage argued that its policy did not cover a majority of the causes of action asserted against the association, it admitted that at the very least, the claim of

13

injurious falsehood was likely covered by both its policy and
Federal's policy.  See id.[4]

Subsequently, the property owners association sued both
insurers for declaratory judgment to establish their obligation
to cover the defense costs in the federal action.  See id.
Hermitage sued Federal in a second declaratory judgment action
to seek reimbursement for all or part of the defense costs of
the state court action.  In a consolidated appeal, the New York
Court of Appeals reviewed well-established New York law that
"[a]n insurer's duty to defend is liberally construed and is
broader than the duty to indemnify...."  Id. at 1017 (citation
omitted).  If "any of the claims against an insured arguably
arise from the covered events, the insurer is required to defend
the entire action."  Id. (citation omitted).  It is, the Court
of Appeals explained, "immaterial" that the complaint against
the insured asserts additional claims which fall outside the
policy's general coverage.  See id.

The New York Court of Appeals then held that Hermitage, the
primary insurer, "has the primary duty to defend on behalf of
its insured and it generally has no entitlement to contribution
from an excess insurer."  See id. at 1018 (citations omitted).
The Court of Appeals concluded: "[b]ased on the broad duty to
defend, and upon the conceded possibility that Hermitage's CGL

---

[4] Federal provided a defense in the state court action only after the
injurious falsehood claim was dismissed.

policy covers at least one cause of action in each of the two
underlying complaints, Hermitage has a duty to provide a defense
to the entirety of both complaints." Id.  Therefore the "loss"
arising from the defense of these actions was a "loss" for which
there was "other insurance," namely the primary Hermitage
policy, within the terms of the exclusion for other insurance in
the Federal policy.  The Court found that "Hermitage had an
obligation to defend both of the underlying actions without
contribution from Federal, notwithstanding the fact that Federal
would appear to have an obligation to indemnify Fieldston for a
greater proportion of the causes of action, if successfully
prosecuted." Id. (citations omitted).

Admiral has not demonstrated any way in which Fieldston is
distinguishable from the current case.  Admiral was the primary
insurer of Owners Corp. and had a duty to defend the entire
lawsuit.  Travelers was the excess insurer and only had a duty
to defend in excess of Admiral.  Admiral, like Hermitage, has
admitted that at least some claims in the Gallup Action were
potentially covered by the Admiral Policy.  (Pl.'s R. 56.1 Stmt.
at ¶22; Def.'s R. 56.1 Stmt. at ¶22; see also Buchert Letter,
Buchert Aff. Ex. F.)  Indeed, Robert Buchert, Admiral's Vice
President-Liability Claims, submitted an affidavit swearing that
while Admiral provided a defense for the entire action,
"coverage only attached to the Gallup Fifth and Ninth cause of

action, for recovery for water damage, and the Tenth cause of
action, for defamation...." (Buchert Aff. at ¶11.) Therefore,
the defense costs of the Gallup Action were a "loss" for which
there was other insurance, namely the Admiral Policy, and,
therefore, Travelers excess coverage for any such costs did not
apply. In this situation, just as in <u>Fieldston</u>, the Other
Insurance clauses are complimentary and dictate the priority of
defense costs.


                               C.

      To circumvent <u>Fieldston</u>, Admiral argues that of the eleven
causes of action alleged in the Gallup Action, its policy was
only responsible for, at most, three of the claims in the Gallup
Action. Therefore, Admiral argues, because Travelers would have
had to pay for the remainder of the causes of action had they
been successful, it has a duty to reimburse Admiral for the
defense costs of those claims. However, <u>Fieldston</u> speaks to and
specifically rejects this argument. The Court of Appeals in
<u>Fieldston</u> stated that "[b]ased on the broad duty to defend, and
upon the conceded possibility that Hermitage's policy covers at
least one cause of action in each of the two underlying
complaints, Hermitage has a duty to provide a defense to the
<u>entirety</u> of both complaints. <u>See id</u>. (emphasis added).

Admiral has conceded that, of the eleven alleged causes of action, its policy covered at least the fifth, ninth, and tenth causes of action.  Based upon this admission, Admiral had a duty to defend the entire Gallup Action.  Furthermore, Admiral is not entitled to any contribution from Travelers "notwithstanding the fact that [Travelers] would appear to have an obligation to indemnify [Owners Corp.] for a greater proportion of the causes of action, if successfully prosecuted."  See id.  Therefore, even if Travelers had been required to contribute if liability were found on any of the claims against Owners Corp. in the Gallup Action, that duty alone did not require it to share in the costs of defending against the claims during the litigation.[5]

---

[5] Admiral appears to argue that Fieldston does not apply because there is no claim for which both the Admiral and the Travelers policies required both insurers to defend.  Admiral argues that the policies contained no congruent claims and therefore Fieldston does not apply.  This misreads Fieldston.  Admiral, like Hermitage, had an obligation to provide a defense for all of the claims, whether or not they were covered by the Admiral Policy, and thus the defense costs for each of the claims was a "loss" for which there was other insurance, and Travelers was not required to defend any of the claims because it provided only excess coverage.  It should also be noted that Admiral conceded it was required to provide coverage for the defamation claim, and, without the benefit of the "other insurance" clause, there is no reasonable argument that the claim was not covered by the Travelers policy also.  While Travelers argues that the defamation claim was not covered by the Travelers Policy because it arose from the original property damage, the harm from the property damage is very different from the harm from defamation, and Travelers cites no case where a "property damage" exclusion excluded a defamation claim.  Certainly, it could not be said that, if Travelers were the primary insurer rather than the excess insurer, there was "no possibility" that the Travelers Policy covered the defamation claim.  See Fieldston, 945 N.E.2d at 1018.  This is not a case like Gemini Insurance Co. v. Kukui'ula Development Co., No. 10-637, 2012 WL 668821, at *16 (D. Haw. Feb. 29, 2012), where one policy was primary in some respects but not with respect to a relevant coverage as to which another insurer did provide coverage.  Indeed, at argument of the motions, Admiral conceded that the defamation claim was a claim to which both Admiral and Travelers potentially provided coverage.

Admiral also argues that the Revised Admiral Policy, with its revised Other Insurance clause, should apply to the Gallup Action because the Gallup Action was still ongoing in 2007. The Gallup plaintiff alleged in his bill of particulars that he continued to suffer damages into April 2007 when the Revised Admiral Policy was in effect. (See Buchert Aff. at ¶5.) Admiral argues that the Revised Admiral Policy, like the Travelers Policy, is an "excess" coverage policy, and therefore, "the 'excess' clauses operate to cancel out each other, [and] both coverages must be treated as primary and each company is obligated to share in the cost of the settlement and the expenses." Federal Ins. Co. v. Atlantic Nat'l Ins. Co., 250 N.E.2d 193, 194-95 (N.Y. 1969) (citations omitted). Admiral's argument is without merit.

None of the cases Admiral cites involve an insurer that, after an occurrence and a claim and the onset of litigation which is covered by a policy, enters into a new and different policy with the insured. Rather, Admiral relies on a number of cases involving insurers who provided primary overlapping coverage at the time of the occurrence or over a long span of time in which the continuous harm occurred. See, e.g., New York v. Blank, 820 F.Supp. 697, 708 (N.D.N.Y. 1993), aff'd in part, 27 F.3d 783, 797-99 (2d Cir. 1994); Emons Indus., Inc. v. Liberty Mutual Fire Ins. Co., 481 F.Supp. 1022 (S.D.N.Y. 1979);

Con. Edison Co. of N.Y. v Allstate Ins. Co., 774 N.E.2d 687
(N.Y. 2002).  Here, in contrast, Admiral had a primary policy
and Travelers had an excess policy during the policy periods
during which the initial occurrence occurred, the initial claims
were made, and the litigation was begun.  Admiral became
obligated to defend the Gallup Action before the 2007 policy
ever went into effect.

Admiral also relies on Federal Insurance Co. v. Cablevision
Sys. Dev. Co., 836 F.2d 54 (2d Cir. 1987).  Cablevision, dealt
with three primary insurers who all had primary commercial
general liability policies with the insured at the time of the
occurrence.  See id. at 55.  Unlike the new excess clause upon
which Admiral bases its 2007 Revised Policy argument, the
insurance policies at issue in Cablevision had clauses that
indicated that costs should be distributed equally among
multiple insurers.  Cablevision relies in part on a New York
case in which two insurers had Other Insurance clauses that
indicated costs should be defrayed equally as well.  See id.
(citing J.P. Realty Trust v. Public Service Mut. Ins. Co., 476
N.Y.S.2d 325 (App. Div. 1984) (per curiam).  These cases do not
support the unilateral imposition of an excess insurance clause
after an insurer has already become liable for defense costs.

Admiral's argument also fails because there is no relevant subsequent consecutive insurer in this case.  While Admiral entered into a subsequent policy with Owners Corp. after the Gallup Action had commenced, Admiral conceded correctly, at the argument of the current motions, that it was obligated to defend Owners Corp. in the Gallup Action when that action was brought in 2006, before the 2007 Revised Admiral Policy was issued. The substitution by Admiral of the Revised Admiral Policy subsequent to the beginning of the Gallup Action did not alter the duty to defend that arose pursuant to the 2005 or 2006 Admiral policy.  As Admiral conceded at the argument of the current motions, had Admiral not entered into the 2007 Revised Admiral Policy with Owners Corp., it still would have been obligated to defend Owners Corp. in the Gallup Action under the 2005 or 2006 policy.  Admiral could not avoid its duty to defend because it entered into a subsequent policy, and that defense cost was a "loss" that was excluded under the Travelers Policy.[6] Admiral points to no case where a primary insurer was able to turn its responsibility for defense costs into excess coverage

---

[6] _Fieldston_ dealt with an issue of the timing of coverage that the Court of Appeals deemed not determinative of the outcome.  _See Fieldston_, 945 N.E.2d at 1014.  In _Fieldston_, the Hermitage commercial general liability policy, a "per occurrence" policy, ran from July 5, 2000 to July 5, 2001.  _See id_.  The Federal D&O policy, a "claims made" policy, ran from February 13, 1999 to February 13, 2002.  _See id_.  The underlying suits that precipitated the declaratory judgment actions, "related to events that occurred during the D&O policy period, but not during the CGL policy period."  _See id_. at 1015. Nonetheless, the Court of Appeals held that, based upon the overlapping coverage in 2000 to 2001 and the Other Insurance clauses, Hermitage had a duty to defend without contribution for defense costs.  _See id_. at 1018.

on a par with an excess insurer, after it had already incurred

the obligation to pay for the defense costs of an ongoing

litigation.

### Conclusion

The Court has considered all of the arguments of the

parties.  To the extent not specifically addressed above, the

remaining arguments are either moot or without merit.  For the

reasons explained above, Travelers' motion for summary judgment

is **granted** and Admiral's cross-motion for summary judgment is

**denied.  The Clerk is directed to enter judgment and to close**

**this case.  The Clerk is directed to close all pending motions.**

SO ORDERED.

Dated:    New York, New York
          August 8, 2012

                                   John G. Koeltl
                            United States District Judge